CHRISTIAN RATH, ADMINISTRATOR FOR ROBERT GRAHAM ET AL.
v. JOHN VANDERLYN.

*Sale to fiduciary agent—Good faith—Laches.*

A man gave a general power of attorney to carry on his business, sell and dispose of any of his real estate, and collect dues. During his absence from the State, the agent closed up his business, obtained execution titles to part of his real estate, and made considerable collections. The principal returned and went into the army, and while home on furlough was induced to give his agent a deed of lands. After his return from the war, being unable to obtain any accounts from the

agent, he sued him for what remained due him and for the value of the lands conveyed, but having become broken down in mind and body and being declared incompetent, and put under guardianship, proceedings in equity were afterwards resorted to for setting aside the deed. *Held* that the grantee had the burden of proving implicit good faith and a perfect understanding and agreement on the grantor's part. But as the grantor had not moved seasonably to repudiate his deed, and as his action at law affirmed the sale but treated it as one where no value was fixed, and as he had since died and the precise facts could not be reached, the sale was sustained and the grantor's estate decreed to be entitled to the full value of the land at the date of its conveyance; and pending an accounting the property was to be subject to a lien for the balance due and the grantee restrained meanwhile from disposing of it until the final decree.

Appeal from Jackson. Submitted October 14. Decided November 10.

BILL for an accounting and to set aside a deed. Complainants appeal. Decree modified.

*Grove H. Wolcott* and *Austin Blair* for complainants.

*G. T. Gridley* for defendant.

CAMPBELL, J. The bill in this case was originally filed by the guardian of Robert Graham, now deceased, who had been declared incompetent by the probate court of Jackson county, and after his death, was revived in favor of heirs and representatives, against John Vanderlyn to compel an accounting of fiduciary matters, and to avoid a deed alleged to have been obtained by fraud from Graham. The court below decreed an accounting, but refused to set aside the deed, and complainants appeal from this refusal. As this narrows the issues, a brief statement of the controversy will be enough to explain the merits.

Graham was in 1859 and previously engaged in the boot and shoe business at Jackson and had been reasonably prosperous. He had in his employ the defendant, Vanderlyn. On the 12th of July, 1858, Graham executed to Vanderlyn a general power of attorney, authorizing the latter to carry on this business in all its departments, to sell and dispose of

any of his real estate, to settle his debts and collect anything due to him. The authority was very broad and general. The bill states this was given in view of a visit to California. The answer states that Graham had no such design until 1859, when he did go there and remained some two years. The real reason is not made clear, and the transaction was certainly a peculiar one. Vanderlyn claims, and it is probable, that he did not assume control until 1859, Graham continuing his own business in the meantime. During his absence Vanderlyn closed up the business entirely and obtained execution titles to a part of the real estate, and collected considerable money which he claims to have paid out for debts and expenses. On his return from California, or not long after, Graham volunteered in the army. He came home on a short furlough in 1864, and immediately before his return to the front, he made a deed to Vanderlyn which is the one in controversy. Vanderlyn claims it was given to him in payment of an amount of $3500, which, he says, was less than the balance then due him for advances. The bill claims that the deed was conveyed at Vanderlyn's urgency on a representation that it would look better under the circumstances of the parties to have it appear that the land had been sold to him, and that he suggested $3500 as the value on which it would pay suitable rent.

After Graham's return from the war, it is claimed that he had become broken in mind and body, as it is urged he had been more or less for several years. It is insisted that no accounts could be obtained from Vanderlyn. In 1868 a suit was brought at common law to recover such balance as was due, and to recover also the value of the land thus conveyed. This suit remained undisposed of until after the probate court put Graham under guardianship, when it was determined very wisely that a suit in equity was a more appropriate remedy.

The circuit court having decreed an accounting, and both parties acquiescing in it, we have therefore nothing to do with this except as it may have a bearing on the remainder of the issues.

We are disposed to think that Graham was not until a comparatively recent period entirely incompetent. But the whole train of circumstances, beginning with the power of attorney and including his career thereafter would seem, in our judgment, to make it entirely clear that he was in a position which rendered him a very easy subject for imposition, and which made it incumbent on his fiduciary agent to be very careful in his dealings with him. From so much as appears in the record we have no doubt that, whether fraudulently intended or not, the taking of the deed was a transaction of so peculiar a character that it devolved on Vanderlyn to assume the burden of proving the most implicit good faith, and a perfect understanding and agreement on the part of Graham. Vanderlyn's testimony is the only proof we have on the subject, and assuming it to be admissible it is not, in view of the surroundings, at all satisfactory. It does not indicate such means of knowledge or such deliberation on Graham's part as would maintain the deed against him if he at an early day repudiated it. And the large increase of rent on a small expenditure of money is very strong evidence that Vanderlyn was endeavoring to make a profit out of his position at Graham's expense.

We think, however, that there is now some difficulty in setting aside the deed, for two or three reasons. In the view we take of Graham's condition we think he should have taken steps to repudiate it within some reasonable time. The suit at law which he commenced affirmed the sale, but treated it as one where no value had been fixed. And until the account is finally taken it would be premature to determine what allowance shall be made, if any, in case of rescission. There is also a strong reason beyond this for following the general rule requiring diligence. Graham is dead and Vanderlyn cannot, as the heirs cannot, have full means of showing just what the facts were. Under the power of attorney Vanderlyn could have made a valid sale, and Graham, by executing this deed merely changed the purchaser. It seems to us that any decree rescinding the deed would be made in more uncer-

tainty than is proper, and that the fault is somewhat due to Graham in not acting promptly.

While, therefore, we do not feel justified in rescinding the deed, we do not think that under the rules of evidence it can be held established as to its consideration. Should it turn out on the accounting that Vanderlyn was not in advance to the extent he claims, the case would be one of actual and not merely constructive fraud. But under any circumstances he could not equitably hold the land at any less price than its then full value, unless the bargain was made with full information and deliberation. This cannot now be fully proved, but in our opinion the testimony all considered distinctly disproves it. Graham's estate is entitled to have that price allowed. As this will enter into the accounting it would be premature for us to fix it.

And, as it must be until accounting uncertain how much of the price, if any, is to be regarded as paid, we think that the property must be held subject to a lien for any balance which may be found due. We cannot take it out of the fiduciary arrangements, and, inasmuch as the land has not been disposed of, so far as appears, Vanderlyn must be restrained from disposing of it until the final decree.

The decree must be modified so far as to require the land to be brought into the accounting at its actual value on the day it was deeded, and holding the property subject to any balance that may be found due on its price, and restraining any disposition of it until final decree.

Costs to be given to complainants in this court.

The other Justices concurred.